## O. W. WEBB AND TOM MENICK v. THE STATE.

No. 11567. Delivered May 2, 1928.
Rehearing denied June 23, 1928.
Second rehearing denied October 10, 1928.

The opinion states the case.

*J. W. Culwell* and *Works & Bassett* of Amarillo, for appellant.

*A. A. Dawson* of Canton, State's Attorney, for the State.

MARTIN, JUDGE.—Appellants were charged by indictment with robbery with firearms. The penalty assessed against appellant Webb was five years, and against appellant Menick, ten years.

It was shown by the State that prosecuting witness, Berry, was robbed of about Five Hundred Dollars in money by three men at about midnight on May 12, 1927, and that said witness positively identified A. G. Goforth as one of the participants in such robbery. Prosecuting witness further testified that participants wore black masks over their faces. The State used the accomplice Goforth as a witness, who testified, among other things, that the appellants and himself robbed the witness Berry substantially as testified to by Berry, after which they started away in a Ford car and got stuck in the mud.

Objection was made to the introduction of testimony by Goforth and Chief of Police Gaither that some ten days after the robbery Goforth accompanied Gaither to the point where said car had been stuck and there pointed out to him some car tracks and that Gaither also found at that point the tops of some black stockings, which Goforth testified were used by the parties as masks on the occasion of the robbery. It is claimed by the appellant that this was the admission of a declaration of a co-conspirator made after the termination of the conspiracy and was too remote. There seems to have been no conversation between Gaither and Goforth admitted in evidence and the testimony went no further apparently than to point out the spot where the car of the alleged robbers had been stuck in the mud, which testimony was admissible as corroborative of the accomplice. Gray v. State, 99 Tex. Crim. Rep. 305. Funk v. State, 84 Tex. Crim. Rep. 402.

Complaint is made because the Court refused to charge that a witness, Mrs. Ethel Snyder, was an accomplice and that one accomplice could not corroborate another. The Court submitted the question of her being an accomplice as an issue to the jury and further instructed that if she were an accomplice that the jury could not convict the appellant upon either her testimony alone or on both the testimony of herself and witness Goforth. This was, in our opinion, all and more than the appellants were entitled to. We fail to find any evidence in the record, which, to our mind, would justify a finding that Mrs. Snyder was an accomplice. She heard and perhaps participated in a conversation between the parties concerning the robbery, but the evidence does not show her criminal connection

in any way with same. That she was particularly friendly with appellants is manifest, but we do not think that the evidence goes any further than to show such friendship.

Her attitude was such that the Court did not abuse his discretion in permitting the State to propound leading questions to her as complained of by appellant in Bill of Exception No. 11. Navarro v. State, 24 Tex. Crim. App. 378. Branch's P. C., Sec. 158.

It is strenuously insisted that the accomplice Goforth was not corroborated. It has frequently been held by this Court that corroborative evidence need not be such as is sufficient to convict independent of that of the accomplice. One of the latest expressions of this Court on the question was in the case of Grice v. State, 298 S. W. 597, where some of the authorities are collated. The accomplice was corroborated by the finding of the tracks and the masks as testified to by him and further by the prosecuting witnesses Berry and Johnson as to the description of the three men who committed the offense and by Mrs. Snyder who testified to hearing a conversation between the three men with reference to its commission and only a little while prior thereto.

Believing the evidence sufficient, and that no reversible errors appear in the record, the judgment of the trial court is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

MORROW, PRESIDING JUDGE.—Appellants have filed separate motions for rehearing. The statement of facts and the record have been carefully re-examined. We are constrained to adhere to the announcement made in the original opinion. A recital of the evidence corroborative of the accomplice Goforth is not deemed necessary. Suffice it to say that the jury was warranted from the testimony of Mrs. Snyder in concluding that the appellants and Goforth engaged in planning the robbery before it was committed. There were several conversations touching the matter at the home of Mrs. Snyder, and her evidence justified the conclusion by the jury that the appellants were at her home together on the occasion of the robbery, after providing themselves with a flashlight and pistol, instruments of that character being used in the commission of the offense.

The point made in the motion that the indictment charged that the money taken "was current money of the United States" seems to be based upon a mistake of fact. The indictment does not contain such an averment. It charges that from Berry there was taken the sum of $500.00. With that averment the evidence corresponded. · Under the averment it is unnecessary to prove either the character or the value of the money.

The motion is overruled.

*Overruled.*

ON APPLICATION TO FILE SECOND MOTION FOR REHEARING.

MORROW, PRESIDING JUDGE.—The application is but a reiteration of the position heretofore assumed and urged by the appellants.

Berry was robbed of $500.00. Three men participated in the robbery. Goforth was one of them. This was proved by the testimony of Berry who knew and recognized Goforth, and also confessed by Goforth in his testimony given upon the trial of Webb and Menick. Goforth had worked for Berry and knew that Berry was in the habit of carrying money upon his person. According to Goforth, the robbery was planned at the home of Mrs. Snyder some three weeks before the offense was committed, at which time both Webb and Menick entered into the agreement with Goforth to commit the offense. Mrs. Snyder, according to her testimony, heard this conversation. According to Goforth, some two or three weeks later, the parties again met at the house of Mrs. Snyder and from there went in an automobile to a point near where the robbery was committed. Mrs. Snyder testified that she heard but little of the conversation that took place between them but declared in her testimony that on the night the robbery took place they were at her house and left there about 11:00 or 11:30 o'clock. According to Berry, the robbery took place about midnight. Such also was the testimony of the accomplice Goforth. There were other circumstances mentioned in the original opinion but the above are deemed the most important. It is the opinion of this court that the corroboration of Goforth to the point that Webb and Menick were co-actors in the offense and were present at the time when it was committed is sufficient. In such a case the law does not demand that there be direct evidence, aside from that of the accomplice, of the fact that the co-principals were present at the time the offense was committed. The demand of the statute goes no further than to require that there be introduced evidence before the jury coming

from sources other than the accomplice which *tends* to connect the accused on trial with the commission of the offense. See C. C. P., 1925, Art. 718; also authorities collated in Vernon's Tex. C. C. P., 1925, Vol. 2, p. 785, subd. 15. When, as in the present case, the accomplice gives evidence which, if true, shows the guilt of his co-principals and is corroborated in material matters tending directly and immediately, and not merely remotely, to connect the accused with the commission of the offense, the law's demand is satisfied. The fact, coming from other sources than the accomplice, that the offense was committed by three persons upon a certain night at a certain hour, that one of the persons was recognized at the time and was proven by testimony other than that of the accomplice to have been associates of the recognized offender and to have been present at a time not remote at a conference in which the three took part in which the robbery was planned to take place in a manner coinciding with that which subsequently happened, and where, from an independent source it is shown that upon the night of the offense the three were again together engaged in a conversation indicating the preparation to carry out their previously formed plan, and where, within less than an hour thereafter the offense is committed, the jury under an appropriate charge having determined that the corroboration was sufficient, this court would have no authority to declare the contrary.

We cannot refrain from adding that the apparently growing practice of filing second motions for rehearing where they present no question other than that which has been twice passed upon places an undue, unnecessary and unprofitable burden upon the court, and it is hoped that the members of the Bar will refrain from attempting second motions for rehearing except it be upon rare and extraordinary occasions in which the point can be made that some fact or principle of law has been overlooked. Except in such instances the court will find itself obliged to ignore the motions. There is no statutory law which sanctions a second motion for rehearing. On very rare occasions has one been granted during the term of court at which it was rendered. Where the motion but reiterates the contentions made and squarely met in the court's opinion upon the original hearing and upon rehearing, the mere difference of opinion between counsel for the appellant and members of the court touching the correctness of the legal propositions stated does not justify the practice mentioned. This court, like all other courts of record, has authority to change its judgment during the term at which its opinion

is announced, and when there is statutory authority for filing a motion for rehearing within a limited time after adjournment, its right to change the judgment at the succeeding term must be recognized. In instances like the present, however, where the court during the term has, on a motion for rehearing, confirmed its previous ruling, the power of the court to change its judgment upon motion filed after the end of the term is open to serious question.

The request to file a second motion for rehearing is refused.

*Refused.*